*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0033P (6th Cir.)
File Name: 04a0033p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

No. 02-2165

JERMAINE CORTEZ CARTER,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00067—Robert Holmes Bell, Chief District Judge.

Argued: December 3, 2003

Decided and Filed: January 27, 2004

Before: SILER, DAUGHTREY, and GIBBONS, Circuit
Judges.

─────────────

## COUNSEL

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for Appellant. Hagen W. Frank, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for

Appellant. Andrew B. Birge, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

─────────────

## OPINION

─────────────

SILER, Circuit Judge. Jermaine Cortez Carter appeals his conviction and sentence under 18 U.S.C. § 922(g)(1)(felon in possession of a firearm) on the basis of: (1) insufficiency of the evidence; (2) ineffective assistance of counsel for failing to move the court for acquittal based upon the insufficiency of the evidence; (3) the addition of a four-level enhancement to his sentencing guideline range for possessing the firearm in connection with another felony offense under USSG § 2K2.1(b)(5); and (4) denial of his right of allocution at sentencing. For the reasons that follow, we **AFFIRM.**

### BACKGROUND

In 2002, two detectives in Grand Rapids were on surveillance duty in an area known to be used by drug traffickers. They saw a four-door Cadillac pull up to the curb and watched Carter and another individual run up to the vehicle. Carter looked around and conversed with the driver while the other individual interacted with the passenger. The two men entered the rear of the vehicle and drove off, with Carter sitting behind the driver. The detectives followed the vehicle until the Cadillac pulled into a driveway. One detective saw a great deal of commotion in the back seat of the vehicle when the detectives' van pulled in behind the Cadillac. The detectives observed the rear passenger-side individual immediately place his hands on the headrest of the seat in front of him. Carter, the other back-seat passenger, was observed leaning forward with his right shoulder, looking back at the officers while digging underneath the driver's seat.

When the front passenger exited, several bags of marijuana fell from the shoulder area of his seat. This was directly in the area where the rear passenger-seat occupant had placed his hands. As one detective approached the vehicle from the rear on the driver's side, he noticed a .25 caliber pistol underneath the driver's seat toward the back.

Carter was indicted as a felon in possession of a firearm. At trial, Sylvester Evans, the front passenger and owner of the vehicle, testified that he and the driver, Adowa Reed, were out to obtain some marijuana. They picked up Carter and drove to a house. When a van pulled in behind them in the driveway, there was a lot of commotion in the back seat. During this commotion Evans saw something in Carter's hand that resembled the pistol shown to him in court. Evans testified that neither he nor Reed had brought the pistol into the vehicle. Carter was convicted for possessing the pistol as a felon. No motion for judgment of acquittal under Fed. R. Crim. P. 29 was made.

Carter's presentence report (PSR) added a four-level enhancement under USSG § 2K2.1(b)(5) for possessing the pistol in connection with another felony offense, the possession of marijuana with intent to distribute. Carter's companion, Mark Matthews, was convicted of this offense in state court. Carter did not raise any objection to the PSR or the guideline range computation when specifically asked by the district court.

At sentencing, the court interrupted Carter twice during his final remarks. After being asked personally by the court if he had anything to say before sentencing, Carter began with a few opening remarks and then continued into the following exchange:

DEFENDANT CARTER: ...my purpose in speaking at this time is so the Court may reflect on me as a person and not so much my prior history. This is my--

THE COURT: Well, Mr. Carter, what is the most accurate predictor of the future, the past or what you tell me about the future?[1]
DEFENDANT CARTER: If you give me a chance, Your Honor, I'm–
THE COURT: I'm asking you a question. If you could just answer it.
DEFENDANT CARTER: Excuse me?
THE COURT: What's the most accurate predictor of the future, the past or your promises for the future?
DEFENDANT CARTER: My promises for the future.
THE COURT: Oh, okay. Continue.
DEFENDANT CARTER: Okay. This is my first and only chance to address the Court. Accordingly, I will speak briefly about the trial proceedings, the lack of evidence presented to the jury by the U.S. attorneys–
THE COURT: Sir, you were convicted. I don't want to hear any more about that.
DEFENDANT CARTER: Okay. Okay, thank you.
THE COURT: Continue.
DEFENDANT CARTER: I'll just speak about my future.
THE COURT: Please do.

Carter went on to outline his future plans. Carter did not object to any of the district court's actions during sentencing.

## ANALYSIS

### A. *Sufficiency of the evidence*

A review of the sufficiency of the evidence to convict, in the absence of a Fed. R. Crim. P. 29 motion, is limited to

---

[1]This first interruption should be seen in the context of Carter's criminal history. Between the ages of 17 and 25, Carter had amassed 18 convictions, 5 other arrests and three separate pending charges in state court, two allegedly committed while Carter awaited trial before the district court. This had been outlined by the PSR before the court.

determining whether there was a manifest miscarriage of justice. *United States v. Carnes*, 309 F.3d 950, 956 (6th Cir. 2002). In his brief, Carter does not argue that there was no evidence to support his conviction. He further concedes that he cannot prevail upon this claim since this court can only reverse if the record is devoid of evidence pointing to guilt. *Id.* Carter's sole argument for reviewing the conviction is that his counsel was constitutionally ineffective for failing to make a motion for acquittal based on the insufficiency of the government's case. As the resolution of the ineffectiveness claim disposes of the sufficiency claim, we turn to it to address both issues.

## B. *Ineffective assistance of counsel*

Ineffective assistance of counsel claims are mixed questions of law and fact that are reviewed de novo. *United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999). Generally, this court does not review ineffective assistance of counsel claims for the first time on appeal, instead requiring a record be developed pursuant to a motion under 28 U.S.C. § 2255. *Id.* An exception exists when a record is adequate enough to address the merits. *Id.* As the sole claim for ineffectiveness is that Carter's counsel did not recognize the insufficiency of the evidence, which is entirely encompassed within the record, the issue is adequately developed.

Carter's ineffectiveness claim must establish that: (1) his lawyer's performance was deficient compared to an objective standard of reasonable performance, and (2) there is a reasonable probability that this deficiency prejudiced the outcome. *United States v. Davis*, 306 F.3d 398, 422 (6th Cir. 2002). Failing to make a motion for a judgment of acquittal that had no chance of success fails both prongs. First, counsel cannot be said to be deficient for failing to take frivolous action, particularly since a frivolous effort takes attention away from non-frivolous issues. Second, it is evident that

failing to make a motion with no chance of success could not possibly prejudice the outcome.[2]

There was no reasonable probability that a motion for acquittal would succeed. Carter stipulated to all elements of the crime, except for possession of the pistol. However, there was ample evidence that Carter possessed the pistol. Evans testified that neither he nor his companion brought the pistol into the vehicle. Evans saw "something" that resembled the pistol in Carter's hand when a commotion started in the rear seat upon the approach of the officers. A detective saw Carter reach under the seat while looking back over his shoulder at the detective when he approached the vehicle. Both detectives observed Matthews, who was sitting in the rear passenger seat, immediately put his hands on the headrest in front of him, circumstantially removing himself from being the source of the pistol's placement under the driver's seat at that time.

Given this evidence, a Rule 29 motion would have had no chance of success, since "[i]t is well established that a trial judge confronted with a Rule 29 motion must consider all of the evidence in a light most favorable to the government." *United States v. Head*, 927 F.2d 1361, 1365 (6th Cir. 1991). "The government must be given the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial. It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt." *Id.*

Carter's attacks on the evidence in his brief are not directly aimed at any evidentiary deficiency, but at the credibility of the witnesses. "It is well settled in this Circuit that attacks on witness credibility are simply challenges to the *quality* of the

---

[2]"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland v. Washington,* 466 U.S. 668, 691-92 (1984).

government's evidence and not to the sufficiency of the evidence." *United States v. Farley*, 2 F.3d 645, 652 (6th Cir. 1993) (emphasis in original). "It is equally clear that issues of witness credibility are for the jury." *Id.* As a Rule 29 motion did not have a reasonable likelihood of success, it cannot be said that Carter's trial counsel was ineffective on either prong of *Davis*. Additionally, since the record is not devoid of evidence of his guilt, Carter's sufficiency challenge must fail. *See Carnes*, 309 F.3d at 956.

## C. *Improper application of sentencing guidelines*

Sentencing issues presented for the first time on appeal are reviewed only for plain error. *United States v. King*, 341 F.3d 503, 505 (6th Cir. 2003). Carter contends the district court erred by applying a four-level increase for possessing the firearm in connection with another felony offense. To establish plain error, Carter must first show that an error occurred. *Id.*

The district court is required to add four points to the offense level if the pistol was possessed in connection with another felony offense. USSG § 2K2.1(b)(5). "So long as the government proves by a preponderance of the evidence that the firearm served some purpose with respect to the felonious conduct, section 2K2.1(b)(5)'s 'in connection with' requirement is satisfied." *United States v. Spurgeon*, 117 F.3d 641, 644 (6th Cir. 1997)(quoting *United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir. 1996)). "A firearm is used or possessed 'in connection with' an offense if the weapon facilitated or potentially facilitated the felonious conduct, or emboldened the defendant during the felonious conduct." *United States v. Sanders*, 162 F.3d 396, 404 (6th Cir. 1998).

The PSR detailed Carter's involvement during his possession offense with a drug transaction for which his companion, Matthews, was convicted. Carter did not lodge an objection to the PSR; indeed, his counsel specifically accepted it. "The district court is allowed to accept as true all

factual allegations in a presentence report to which the defendant does not object." *United States v. Levy*, 250 F.3d 1015, 1018 (6th Cir. 2001); *see also United States v. Garcia-Meza*, 315 F.3d 683, 686 (6th Cir. 2003)(no plain error where the district court accepts a PSR to which no objection was lodged). The court found, without objection, that Carter possessed the firearm in conjunction with a felony drug offense. There was no plain error in this finding.

## D. *Denial of allocution*

As Carter did not lodge an objection during sentencing, this court reviews his allocution claim only for plain error. *Garcia-Meza*, 315 F.3d at 685-86.[3]

Fed. R. Crim. P. 32(c)(3)(C) requires the court to "address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence." Carter claims when the court stated it did not want to hear about the lack of evidence used to convict him, he was denied allocution. Denial of allocution is reversible error. *United States v. Riascos-Suarez,* 73 F.3d 616, 627 (6th Cir. 1996). A denial generally occurs when a defendant is not, personally and unambiguously, invited to address the court before sentencing, *Green v. United States*, 365 U.S. 301, 305 (1961), or when a court refuses to listen to

---

[3]*United States v. Wolfe*, 71 F.3d 611, 614 (6th Cir. 1995), set forth a de novo standard of review for denial of allocution allegations. However, in a case like Carter's, where the allegation is not that there was a complete denial but only an inappropriate limitation, the defense should indicate some type of discontent. In Carter's case, the allocution ended with "[t]hank you for giving me this opportunity to be heard before the Court, Your Honor. THE COURT: Thank you." Neither Carter nor his counsel voiced any discontent that he was not able to personally address the court in a specific manner desired. *See also United States v. Li*, 115 F.3d 125, 132 (2d Cir. 1997) (contemporaneous objection to an inappropriate limitation of allocution found in the defendant's attempt to make herself heard by a court despite lacking a formal objection from counsel).

the defendant's statement. *Li*, 115 F.3d 125, 133 (2d Cir. 1997) ("Rule demands that each defendant be allowed a meaningful right to express relevant mitigating information before an attentive and receptive district judge").

Allocution is the right to present a defendant's plea in *mitigation, see Green*, 365 U.S. at 304, and is not unlimited. *Li,* 115 F.3d at 133 ("[A] defendant's right to allocution is not unlimited in terms of either time or content."); *United States v. Muniz*, 1 F.3d 1018, 1025 (10th Cir. 1993)("[T]he judge does not have to let the defendant re-argue the case at sentencing."); *United States v. Kellogg*, 955 F.2d 1244, 1250 (9th Cir. 1992) ("Although the defendant has a right of allocution at sentencing, that right is not unlimited.").

Defendants may address the amount or quality of evidence adduced at trial to explain their role in an offense or the severity of their conduct, *see Li*, 115 F.3d at 131-35, but not merely to continue to deny guilt. *See Muniz,* 1 F.3d at 1024-25. Addressing the evidence to show a mitigating role is particularly apt if a plea was not entered explaining a defendant's conduct and/or mental state, or if the defendant did not testify during trial. However, as the sole contested fact in Carter's trial was whether he possessed the firearm, this is not such a case.

The court merely informed Carter it did not wish to hear an irrelevant sentencing argument which had already been properly made before the court during Carter's closing argument.[4]   The court's ongoing interaction with Carter

---

[4] Carter argues that he was compensating for his counsel's failure to address the sufficiency of the evidence at closing. This ignores the fact that his counsel gave a thoughtful and detailed closing argument addressing the weakness of the case against Carter. While not persuasive to the jury, it calls into question Carter's post hoc need to address the subject. At oral argument, Carter raised the issue of residual doubt as a proper mitigating subject to address in his allocution. Leaving aside the fact Carter did not raise this to the trial court, there have been only a few

during allocution evidenced a substantive colloquy bearing upon the sentence. *See Riascos-Suarez*, 73 F.3d at 627. The court demonstrated attentiveness to Carter's allocution by informing him, after imposing sentence, which comments were ineffective and why, along with the court's approval of Carter's future plans. Therefore, as Carter was personally invited to address the court and then engaged in a substantive colloquy with the trial judge bearing upon his sentence, the requirements of Fed. R. Crim. P. 32(c)(3)(C) were fulfilled. Since the court permitted Carter to discuss any relevant matters desired in relation to his sentencing during this colloquy, Carter was not denied his right of allocution.

**AFFIRMED.**

---

times that any legitimacy has been given to the notion that defendants have the right to argue their innocence during sentencing, even for capital defendants. *See Franklin v. Lynaugh*, 487 U.S. 164, 173-74 (1988).