**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0455n.06

**No. 08-4003**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 26, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| JOSEPH HOST, | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before:     KEITH, BOGGS, and GRIFFIN, Circuit Judges.

PER CURIAM.

Defendant Joseph Host ("Host") pleaded guilty to a count of conspiring to distribute Schedule II controlled substances. 21 U.S.C. §§ 841(a)(1) and 846. After dismissing sixty-three related counts against him, the district court imposed a below-Guidelines sentence of 168 months. Host appeals the district court's enhancement of his offense level pursuant to U.S.S.G. § 3B1.1(a). We affirm.

I.

From March 1 until June 25, 2007, local and federal law enforcement agents directed confidential informants to purchase methamphetamine from Host. Host executed six such sales of between one and five ounces. By August 2007, agents were intercepting Host's cellular calls.

These authorized wiretaps revealed Host's regular communication with sellers, distributors, and prospective customers about drug-related matters. Host's co-conspirators included cocaine supplier Miguel Gonzales Morfin ("Morfin"); methamphetamine supplier Adolfo Barragain-Rodriguez ("Rodriguez"); methamphetamine distributor Cory Armstrong ("Armstrong"); methamphetamine manufacturer Michael Clapper ("Clapper"); and a number of prospective methamphetamine purchasers, including David Knepp, Patricia Knepp, and Dennis Grimes. Among the conspirators, Host christened himself "the master."

On August 3, 2007, Host stated that he was waiting for a shipment from Rodriguez and working with Morfin. Host and Morfin would later discuss the prices to be paid per kilogram of cocaine, the means of transport, and the site of delivery. When Host announced the impending shipment to Armstrong, and asked whether the distributor could effectively sell the drugs, Armstrong indicated that he could complete the sale within two days. Host also contacted the Knepps, assuring them that a "nice big chunk" would arrive soon. While organizing the distribution of the drugs, Host complained that Rodriguez was "slacking" and repeatedly called customers to alert them to delivery updates. In the meanwhile, Host discussed purchasing Sudafed, a common methamphetamine ingredient, with Clapper.

During the month of August 2007, Host spoke with fellow conspirators nearly every day regarding the date of delivery of methamphetamine and Sudafed, barriers to transfer, and market rates. He arranged up-front cash sales of methamphetamine on August 21, 2007, a shipment of which was delivered to Armstrong the following day. On September 17, 2007, three of Morfin's associates traveled from California to deliver six kilograms of cocaine to Host's home in Ohio. Host

and Rodriguez had already agreed to deliver one of the kilograms to an undisclosed individual on consignment for $26,000. However, the sale never took place. Agents executed a search warrant at Host's residence, seized all six kilograms of cocaine, and arrested the three drug couriers, who had converged in Host's garage. All told, Host received six kilograms of cocaine and at least five pounds of methamphetamine during the course of the conspiracy.

On December 5, 2007, a federal grand jury in the Northern District of Ohio returned a sixty-four-count superseding indictment against Host and fifteen other individuals. The first count charged all sixteen with conspiracy to distribute five kilograms or more of cocaine and fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Counts four, five, and six respectively charged Host individually with the knowing and intentional distribution of 138, 82.3, and 55 grams of methamphetamine. Counts seven and eight charged Host and others with the knowing and intentional distribution of one and six kilograms, respectively, of cocaine. Finally, counts nine through sixty-four charged all sixteen defendants with the knowing and intentional use of a communication facility to facilitate acts constituting a felony under 21 U.S.C. § 841(a)(1) and 846, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2.

On January 31, 2008, Host appeared before the district court with counsel and pleaded guilty to conspiracy to distribute, and conspiracy to possess with intent to distribute, five kilograms or more of a mixture or substance containing a detectable amount of cocaine and fifty grams or more of methamphetamine, pursuant to a plea agreement. Host conceded that he had supplied the drugs to other individuals with the intention that they be distributed in Ohio.

Host appeared before the district court for sentencing on July 23, 2008. In determining his applicable Guidelines range, Host's PSR indicated that he was responsible for six kilograms of cocaine hydrochloride and five pounds of methamphetamine, resulting in a marijuana equivalency of 5,736 kilograms and a base offense level of 34. Host objected to the PSR's recommendation of a four-level enhancement for his leadership role in the offense. The district court denied his objection at sentencing:

> "I'm rejecting the plea agreement for the two-level. I'm accepting the four-level increase. If it were a close call, I'd go with the two level. It's not even close. . . . [Sixteen] defendants in this case . . . have you[] . . . as the band leader, orchestrating all of this – all . . . the drugs coming in, who's going to get it, when they're going to arrive, who's going to distribute it . . . ."

After applying a full three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, the district court determined that the total offense level was 35 and the criminal history category was III. The court calculated a Guidelines range of 210 to 262 months. After downward adjustments for Host's cooperation with the Government, the court imposed a 168-month sentence, followed by three years of supervised release. Host timely appealed.

II.

The Sixth Circuit has not yet established the standard that governs review of § 3B1.1 sentencing enhancements. A district court's factual findings are generally reviewed for clear error; its legal conclusions are reviewed *de novo*. *United States v. Jeross,* 521 F.3d 562, 569 (6th Cir. 2008). However, the Supreme Court has suggested that appellate courts should review a district court's application of sentencing enhancements "deferentially." *Buford v. United States,* 532 U.S. 59, 64 (2001); U.S.S.G. §§ 4B1.1, 4B1.2. While *Buford* is apposite to our review of cases under §

3B1.1, *see, e.g., United States v. Lalonde,* 509 F.3d 750, 764 (6th Cir. 2007), we need not determine what standard to apply at this juncture because the enhancement was proper under either standard.

III.

Host challenges the district court's Guidelines calculations. "When considering the Guidelines, the district court must calculate the correct sentencing range. In practice, this means that the court must begin at the proper base-offense level, apply any applicable enhancements or reductions to arrive at the adjusted-offense level, and use the resulting offense level with the appropriate criminal-history category to arrive at a sentencing range." *United States v. Thompson,* 515 F.3d 556, 561 (6th Cir. 2008) (citation omitted). In the instant case, Host argues that the district court improperly applied a four-level leadership enhancement.

Under U.S.S.G. § 3B1.1(a), a four-level enhancement is warranted "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Accordingly, we consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1 app. n.4. Significantly, Host need only have organized or led one other participant. *See United States v. Bennett,* 291 F.3d 888, 897 (6th Cir. 2002). The district court's factual findings regarding the § 3B1.1 enhancement control absent "the definite and firm conviction that a mistake has been made." *United States v. Jeross,* 521 F.3d 562, 569 (6th Cir.

2008). In the instant case, the district court determined that Host served as the drug conspiracy's "band leader" and was at"the center of it all:"

> The drugs were being shipped to you, procured by you, and you were handling distribution to Armstrong and the rest of the gang after that . . . . It's your own words that help sink you, too. 'I am the master,' [you declared on August 12, 2007, while discussing a drug deal with a co-defendant]. Well I guess you are; until now.

Because Host directed the actions of Morfin, Rodriguez, and Armstrong, the district court's imposition of the leadership enhancement was not error. Host was the only defendant to participate in every one of the overt acts described in his PSR. He communicated daily with numerous co-defendants regarding the supply and distribution of methamphetamine and cocaine. He directed deliveries and set the prices of drug sales. He served as sole contact for the methamphetamine and cocaine supply.

Host's role as supplier does not minimize his role as leader. While it is true that "mere buying and selling, without other evidence, is not sufficient to show that a defendant is a leader, organizer, manager, or supervisor . . . these principles do not mean that the defendant must directly employ or control a partnership or enterprise." *United States v. Schultz,* 14 F.3d 1093, 1099 (6th Cir. 1994) (internal citations omitted). Instead, "coordinating an interstate . . . scheme of distribution that [continually] brings contraband into the community for distribution . . . should . . . qualify a [defendant] as an 'organizer' of criminal activity." *Id.* Host was certainly a leader or organizer under this standard, having coordinated a conspiracy spanning several states and more than ten participants. For example, on five occasions between March 1 and June 25, 2007, Host sold between one and five ounces of methamphetamine to confidential informants. He organized and coordinated

the purchase of methamphetamine from a Californian supplier and designated an Ohio-based distributor. Host further served as a frequent point of contact between suppliers and purchasers. For example, during the month of August 2007 alone, Host had almost daily discussions with fellow conspirators regarding the date of delivery of methamphetamine and Sudafed, barriers to transfer, and market rates. Finally, upon executing a search warrant of Host's home, police discovered not only six kilograms of cocaine, but several co-defendants who had assisted with the sale. It follows that Host offered not only his organizational savvy, but also his own home, in service of the drug conspiracy.

Finally, contrary to Host's contention, the district court had no obligation to hold a hearing before rejecting the parties' stipulation to a two-level offense enhancement. Host's PSR indicated that he coordinated the drug trafficking organization. It also detailed conversations between Host and other individuals, which indicated that Host was the organizer and leader of the conspiracy. Because Host did not object to the PSR's factual allegations, with the exception of clarifying that the charge was for cocaine rather than crack, the district court was entitled to accept them as true. *See United States v. Carter,* 355 F.3d 920, 925 (6th Cir. 2004) ("'The district court is allowed to accept as true all factual allegations in a presentence report to which the defendant does not object.'") (quoting *United States v. Levy,* 250 F.3d 1015, 1018 (6th Cir. 2001)). *See also* Letter from Nathan A. Ray, Counsel, Burdon & Merlitti, to David T. Abraham, Officer, Federal Probation Office (Mar. 31, 2008) (clarifying that the offense involved powder cocaine rather than crack cocaine, and objecting to a four-level increase in Host's offense level under U.S.S.G. § 3B1.1(c)). Based upon the evidence before it, the district court did not clearly err in finding that Host was the organizer or

leader of at least one participant in the offense. Further, the district court was in no way bound by the parties' agreement to a two-level offense enhancement under § 3B1.1. Indeed, Host concedes that the plea agreement's recommendations were not binding on the Court. (Appellant's Br. at 10.) ("Appellant Host recognizes that the Plea Agreement specifically states that the recommendations contained therein are not binding on the Court.") Defendant's plea colloquy only reinforced that sentencing "rest[ed] within [the court's] discretion."

The district court appropriately applied § 3B1.1(a), whether its findings are reviewed deferentially or *de novo*. The evidence overwhelmingly suggests that Host's leadership warranted the four-level enhancement. Despite Host's unsupported assertions on appeal, the district court properly concluded that he "was an organizer or leader of a criminal activity that involved five or more participants," and therefore did not err in enhancing his sentence pursuant to § 3B1.1(a).

IV.

For the foregoing reasons, we AFFIRM the sentence.