NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0830n.06

Case No. 14-4197

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Dec 23, 2015<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| SVETISLAV VUJOVIC, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

**O P I N I O N**

BEFORE: BOGGS and McKEAGUE, Circuit Judges; BERTELSMAN, District Judge.[*]

**McKEAGUE, Circuit Judge.** Over the course of five years, Svetislav Vujovic was engaged in a scheme to defraud the St. Paul Croatian Federal Credit Union in Cleveland, Ohio. He submitted false loan applications and bribed the credit union's Chief Operating Officer to secure loans. After the collapse of the credit union in 2010, Vujovic was charged with one count of financial-institution fraud, one count of giving gifts for procuring loans, ten counts of making false statements to a federal credit union, and two counts of money laundering. He was convicted by a jury on all fourteen counts. Vujovic now appeals, arguing that (1) the government unconstitutionally suppressed exculpatory evidence; (2) new evidence warrants a

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

new trial; (3) the district court infringed on his constitutional right to testify; (4) the district court interfered with his rights to allocute and call witnesses at sentencing; and (5) his trial counsel was unconstitutionally ineffective. We decline to address the merits of Vujovic's ineffective-assistance-of-counsel claims without prejudice but otherwise affirm his conviction and sentence.

**I**

Svetislav Vujovic is an Ohio businessman who was involved in the construction business. From 2004 to 2008, Vujovic was engaged in a scheme to defraud the St. Paul Croatian Federal Credit Union (the Credit Union) in Cleveland, Ohio. Vujovic lied on loan applications to secure loans from the Credit Union. He lied about the purpose of these loans, stating that they were going to his businesses when they instead were used personally by Vujovic to support his lifestyle. He also lied on the applications about his monthly income so that he would appear to be a stronger candidate for loans. He intentionally left sections of the loan applications blank, but signed the applications verifying that the information contained within was true and complete. He used different methods to keep his loans current without making payments, such as redirecting the proceeds from one loan account to pay another and using a method called loan reset—rolling the principal and interest into a new loan so that it looks current even though no actual payments were made. To facilitate these fraudulent activities and continue to be approved for new loans, Vujovic bribed Anthony Raguz, the Chief Operating Officer of the Credit Union.

Vujovic's theory at trial was that he was simply an unsuccessful businessman. He secured these business loans, but his construction projects were not always successful. He pointed the finger at Anthony Raguz and argued that the government's evidence merely showed the attempts made by Raguz and other Credit Union employees to disguise their own culpability. Vujovic used evidence of the rampant fraud at the Credit Union to argue that, to the extent he

was a participant in the fraud, he was an unknowing one. The jury was unpersuaded and on May 13, 2014 convicted Vujovic of all fourteen charges: one count of financial-institution fraud in violation of 18 U.S.C. § 1344; one count of giving commissions or gifts for procuring loans in violation of 18 U.S.C. § 215(a)(1); ten counts of making false statements to a federal credit union in violation of 18 U.S.C. § 1014; and two counts of money laundering in violation of 18 U.S.C. § 1957. Vujovic was sentenced to 109 months' imprisonment on all counts to be served concurrently, followed by three years of supervised release, as well as a $1,400 special assessment and $2,950,541.56 restitution.

## II

On appeal, Vujovic has identified numerous pieces of evidence that he claims were withheld from him prior to trial and sentencing in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Despite his litany of claims, he has not demonstrated that the prosecution violated its constitutional duty to disclose exculpatory evidence. "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). To establish a *Brady* violation, a defendant has the burden of proving three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

None of the evidence that Vujovic claims was unconstitutionally withheld constitutes *Brady* material. As an initial matter, several of the items of evidence that Vujovic has identified might not have been suppressed at all—either because the item may have never been in the government's possession (such as Raguz's day calendar and interview notes for bank teller

Katica Covic[1]) or because the information was available to the defendant by means other than disclosure by the government (such as matters of public record). *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000) ("Further, there is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source."). However, we need not determine which of the numerous pieces of evidence were, in fact, actually suppressed, because Vujovic has failed to show that the evidence is favorable to him or that its alleged withholding was prejudicial.

## A

The allegedly withheld evidence was not exculpatory. In order to constitute *Brady* material, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler*, 527 U.S. at 281–82. Vujovic argues that his failure to provide complete information on his applications was because they were computer-generated, but this is not exculpatory given that Vujovic signed these false loan applications to verify that the applications were complete and accurate. Most of the other evidence that Vujovic has identified is only useful to show that others were guilty of separate criminal acts—but such evidence would not show that Vujovic was innocent. For example, Vujovic refers to loans that "were secured by the assignment of shareholder accounts, some of which were nonexistent" to show that credit-union employees were creating fake loans. R. 81-2, Gojevic Investigative Interview at 1–2, Page ID 1853–54. Vujovic also points to Raguz's day calendar, which he claims would be exculpatory because it would show the names of other customers who, like

---

[1] The prosecution claims that "the government has never seen nor had possession of any such calendars, much less any during the relevant time period years before [the Credit Union's] closure, if they even exist." Appellee Br. 27. The prosecution also claims that Katica Covic was never interviewed by the government.

Vujovic, met with Raguz on the days Raguz took envelopes of cash to his bank. But the government never disputed that others were also bribing Raguz. Moreover, the evidence at trial focused not only on meetings between Vujovic and Raguz and cash bribes, but also bribes Vujovic made by check.

Vujovic further refers to bank applications for other individuals that had sections left blank and argues that the government failed to turn over "bank teller interview information" for Katica Covic, Linda Fuduric, and Debbie Politi that would have corroborated this. Vujovic has provided *no* evidence of what this "interview information" of Katica Covic and Linda Fuduric would contain, let alone how the information would have helped his case. As for Debbie Politi, he only refers this court to his investigator's interview notes. None of the information Politi told the investigator is exculpatory. Politi "handled car loan applications" for the Credit Union and said that "the computer generated a loan application printout for individuals who previously had loans with the credit union, and the borrower signed the application." R. 81-1, Politi Investigative Interview at 1, Page ID 1852. She had never handled any loans for Vujovic. Regardless, it is not exculpatory that other borrowers may have applied for and received loans based on submitting incomplete loan applications.

**B**

Moreover, Vujovic also fails to prove that "there is a reasonable probability that . . . the result of the proceeding would have been different" had the prosecution turned over the evidence he identified. *United States v. Bagley*, 473 U.S. 667, 682 (1985). A reasonable probability of a different result is shown "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting

*Bagley*, 473 U.S. at 678). In conducting this assessment, we consider all of the undisclosed evidence "collectively, not item by item." *Id.* at 436.

*At Trial.* Vujovic has not demonstrated that there is a reasonable probability that he would not have been convicted, even if the government had turned over to him all of the items he has identified. Again, demonstrating other individuals' guilt for separate crimes would not have had any effect on the determination of Vujovic's culpability in this case. And the alleged *Brady* material "must be evaluated in the context of the entire record." *United States v. Agurs*, 427 U.S. 97, 112 (1976). "[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." *Byrd v. Collins*, 209 F.3d 486, 518 (6th Cir. 2000). The jury was already made aware that Raguz was heavily involved in the fraud that ran rampant in the Credit Union and that Raguz had tried to conceal his own crimes. Thus, Vujovic has failed to show that there is a reasonable probability that the result of the trial would be different if the government had turned over information that Raguz periodically altered loans, the fact that Raguz had lied to the Board of Directors about whether the credit union's computers were capable of generating loan rates of return, and the names of Credit Union members disputing their loans.

*At Sentencing*. Similarly, Vujovic has not shown that there is a reasonable probability of a different sentence had the government turned over the evidence he has identified. Vujovic argues that the government unconstitutionally suppressed the following evidence at sentencing: blank bank applications, the names of Credit Union members who disputed their loans, and information that Raguz and some tellers would "periodically alter[]" or create loan documents to

make it appear that loans were current. Appellant Br. 24. But Vujovic fails to raise any compelling arguments as to how this evidence would have impacted his sentence. He also argues that he should have had access to other customers' loan applications that were either incomplete or contained information that had been "whited out," Appellant Br. 38, claiming that he would have been able to use this information to argue more effectively that his loss calculation was less than $2.5 million, which would have resulted in a lower Sentencing Guidelines range. Another borrower's false or incomplete loan application, however, would not mitigate Vujovic's loss calculation, and so Vujovic has not shown that there is a reasonable probability that he would have received a different sentence.

### III

After he was convicted on all counts, Vujovic filed a motion for a new trial on May 28, 2014. His motion for a new trial alleged: a series of *Brady* violations, that the verdict was against the manifest weight of the evidence, that there was insufficient evidence to sustain the conviction, and that he received ineffective assistance of counsel. On appeal, he argues that his motion for new trial should have been granted because of the following, allegedly new, evidence: investigative interview notes for Josip Gojevic and Debbie Politi from July 2014, Raguz's day calendar, and blank computer-generated printouts for other Credit Union loan applications—the same evidence on which he bases several of his *Brady* claims on appeal.

To obtain a new trial based on newly discovered evidence, a party must show that "the new evidence (1) was discovered after the trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal." *United States v. Hanna*, 661 F.3d 271, 297–98 (6th Cir. 2011). We need not assess whether the pieces of evidence that Vujovic has identified meet the first three

elements, because they clearly fail to meet the fourth. As we determined above, Vujovic did not establish a *reasonable probability* of a different result even if he had had access to *all* of his claims for *Brady* material. It must logically follow, then, that he cannot meet the more exacting standard that he would have *likely been acquitted* if he had had access to only *some* of that evidence.

**IV**

Vujovic argues that the district court interfered with his right to testify by impeding his attempts to explain his lack of involvement in preparing the loan applications. A criminal defendant has a fundamental right to testify in his own defense. *Rock v. Arkansas*, 483 U.S. 44, 50–53 (1987). But the right to testify is not absolute. *Id.* at 64. Vujovic "does not dispute that a trial judge has wide discretion to manage proceedings," but argues that these instances of interference "prevent[ed] him from providing complete and accurate testimony to the jury." Reply Br. 8; Appellant Br. 32.

Vujovic cites five instances of alleged interference. A review of the transcript, however, reveals that three of the times the trial judge stepped in were when Vujovic gave nonresponsive or narrative answers. R. 70, Trial Tr. Vujovic at 100–01, Page ID 1594–95; R. 70, Trial Tr. Vujovic at 174–75, Page ID 1668–69; R. 70, Trial Tr. Vujovic at 180–81, Page ID 1674–75. One of the times, the district court stepped in to ask Vujovic a clarifying question. R. 70, Trial Tr. Vujovic at 163–65, Page ID 1657–59. In Vujovic's remaining case of alleged interference, the district court did not interject at all. R. 70, Trial Tr. Vujovic at 147–48, Page ID 1641–42.

The district court was only managing proceedings and thus did not unconstitutionally interfere with Vujovic's right to testify. Nor do these five interruptions rise to the level of improperly influencing the jury during his testimony, as Vujovic claims. Moreover, Vujovic was

given a chance to explain his level of involvement in preparing the business-loan applications on redirect examination.

Vujovic argues further that the district court improperly asked his counsel to "reel him in." This one comment, however, did not affect the jury's ability to independently assess Vujovic's credibility, as Vujovic claims. The district judge was merely instructing Vujovic and his attorney that Vujovic needed to answer the questions posed to him without editorializing. Given that there was only a single instance of such a comment and given the context in which the comment was made, there is no reason to believe that the district court's comment "let's reel him in" usurped the jury's role in determining Vujovic's credibility. *See also* R. 71, Trial Tr. Jury Instructions at 3, Page ID 1722 ("Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.").

## V

Vujovic next argues that the district court unreasonably interfered with his right to allocute and call witnesses in mitigation at sentencing in violation of his First, Fifth, Sixth, and Fourteenth Amendment rights. The district court did not err in focusing Vujovic's allocution to relevant sentencing factors nor did it err in refusing to allow irrelevant witness testimony at sentencing.

## A

Vujovic argues that the district court unconstitutionally interfered with his right to allocute at sentencing. There is no constitutional right to allocution. *Pasquarille v. United States*, 130 F.3d 1220 (6th Cir. 1997); *see also Hill v. United States*, 368 U.S. 424, 428 (1962) ("The failure of a trial court to ask a defendant represented by an attorney whether he has

anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional."). But there is a right to allocution under the Federal Rules of Criminal Procedure. The court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). Vujovic alleges that the district court placed an inappropriate limitation on his exercise of that right. Because he did not lodge an objection during sentencing, we review his allocution claim only for plain error. *United States v. Carter*, 355 F.3d 920, 926 (6th Cir. 2004).

The right to allocution is not unlimited. "Defendants may address the amount or quality of evidence adduced at trial to explain their role in an offense or the severity of their conduct, but not merely to continue to deny guilt." *Id.* Vujovic began his allocution by discussing his work ethic and his family background, but he quickly transitioned into a lengthy criticism of the evidence presented at trial. He particularly protested the characterization of his lavish lifestyle; the allegation that he had given bribes to employees of the Credit Union; and the credibility of trial witnesses. Eventually, the district court interrupted:

> Mr. Vujovic, I have to cut you off at this point. Everything you are testifying to right now or giving me a statement is directly contrary to the jury's findings. I cannot accept this any longer. Even though the Government is not objecting, and I give them a lot of credit for sitting there and not doing anything, you cannot rehash the trial. This is for mitigation. This is not to go ahead and give a closing argument against the Government's evidence, and that is exactly what you are doing. We're done with that.

R. 94, Sentencing Transcript at 19, Page ID 1959. As in *Carter*, the trial court here "merely informed [the defendant] it did not wish to hear an irrelevant sentencing argument which had already been properly made before the court during [his] closing argument." *Carter*, 355 F.3d at 926. The jury had already assessed the trial witnesses' credibility and the other evidence

presented, and it had found beyond a reasonable doubt that Vujovic had given bribes and that he had submitted false loan applications with the requisite intent to defraud. The district court correctly asserted that, instead of arguing his innocence, Vujovic should focus his allocution on relevant sentencing factors, including his family and his work ethic.

After the district court directed Vujovic's allocution to relevant sentencing factors, Vujovic spoke of being a loving father and his close family relationships. Though he continued to deny wrongdoing, he apologized to the Credit Union's members for his role in its collapse. He described his hard work and efforts to provide for his family. The district court was attentive to Vujovic's allocution, noting in particular his strong family ties and his apology to the credit union members when imposing his sentence. Vujovic was personally invited to address the court and was permitted to discuss any relevant matters desired in relation to his sentencing and therefore was not denied his right of allocution.

**B**

Vujovic argues that the district court unreasonably interfered with his right to present testimony from Josip Gojevic and Deborah Politi at sentencing. He claims this violated his First, Fifth, Sixth, and Fourteenth Amendment rights, but cites to no case recognizing a constitutional right to call witnesses in mitigation during non-capital sentencing. We evaluate his claim in the context of the Federal Rules of Criminal Procedure, which require the court to "address the defendant personally in order to permit the defendant to . . . present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). We review a district court's evidentiary rulings for abuse of discretion. *United States v. Morales*, 687 F.3d 697, 701 (6th Cir. 2012). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly

applies the law, or when it employs an erroneous legal standard." *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004).

No abuse of discretion occurred. Vujovic wanted to present testimony from Gojevic and Politi. The parties discussed this in chambers, and the district court refused to permit these two witnesses to testify. When they returned to the courtroom, Vujovic did not object to the ruling but proffered that the witnesses' testimony would have been consistent with their investigative interview notes. There is no information in the investigative interview notes or in Vujovic's brief indicating that this testimony would have been relevant to sentencing.

Josip Gojevic worked at the Credit Union and became aware of Raguz's loan fraud scheme when the government began investigating. Gojevic did not know Vujovic. He testified at trial that he had seen Raguz deposit envelopes with cash after meeting with Vujovic, but told the investigator that because Raguz met with more than one customer throughout the day "it would not be fair to conclude the cash in the envelopes Raguz took to the bank came from Vujovic." R. 81-2, Gojevic Invesigative Interview at 2–3, Page ID 1854–55. Thus, the only reason Vujovic could have wanted Gojevic to testify at his sentencing was to continue to argue that he was not guilty of the crimes for which he had been convicted. A defendant, however, cannot continue to present evidence of innocence at sentencing. In fact, it would have been reversible error for the sentencing judge to consider Vujovic's claims of innocence. *United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008) (holding defendant's sentence to be substantively unreasonable because "the judge in sentencing [relied] on facts directly inconsistent with those found by the jury beyond a reasonable doubt"). Here, the jury had already found beyond a reasonable doubt that Vujovic had given commissions or gifts for procuring loans. And, to the extent that Vujovic wanted to use Gojevic's testimony to argue that

there was a policy at the Credit Union that instructed him to fill out the loan applications as he did, this testimony would have been irrelevant. The jury had found beyond a reasonable doubt that Vujovic had knowingly executed or attempted to execute a scheme to defraud a financial institution or to obtain money or other property owned by or in the control of the financial institution, by means of false or fraudulent pretenses, representations, or promises. "Nothing in § 3553(a) suggests that Congress intended that sentencing judges should rely on a defendant's innocence when the defendant has already been found guilty beyond a reasonable doubt." *Id.* at 649.

Likewise, there is no evidence that Deborah Politi could have testified to any relevant information at sentencing. Politi worked at the Credit Union handling car-loan applications but did not process any loans for Vujovic. Neither the notes from her investigative interview nor Vujovic's brief reveal any information that would have been pertinent to Vujevic's sentencing. Therefore, it was not an abuse of discretion for the district court to prevent Gojevic and Politi from testifying at Vujevic's sentencing hearing.

## VI

In this direct appeal, Vujovic argues that his trial counsel provided ineffective assistance. He identifies seven areas of inadequacy: (1) failure to investigate the Credit Union's loan-application procedures and the deceptive conduct of the Credit Union's employees, (2) failure to file any pretrial motions, (3) failure to object to leading questions on direct examination, (4) failure to effectively cross-examine witnesses, (5) using "pejorative" terms regarding Vujovic during opening statements, (6) agreeing to "hamstring" Vujovic's testimony, and (7) a general lack of preparation.

Generally, we do not review claims of ineffective assistance of counsel on direct appeal, "since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (quoting *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990)); *see also Massaro v. United States*, 538 U.S. 500, 504–05 (2003) ("When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose."). A rare exception to our general rule exists "when a record is adequate enough to address the merits." *Carter*, 355 F.3d at 924. That is not the case here. Without additional factual development, Vujovic cannot show that his counsel's actions were not supported by reasonable strategy or that the alleged errors were prejudicial. *See Massaro*, 538 U.S. at 505. Thus, we decline to address the merits of Vujovic's ineffective-assistance-of-counsel claims without prejudice, allowing him to raise these claims in a post-conviction proceeding under 28 U.S.C. § 2255.

## CONCLUSION

Although he has brought numerous claims on appeal, Vujovic does not prevail on any of them. He has not demonstrated that the government unconstitutionally suppressed exculpatory evidence, nor has he shown that he is entitled to a new trial because of newly discovered evidence. The district court did not unreasonably interfere with Vujovic's constitutional right to testify. Vujovic's right to allocution was not infringed, and the district court properly denied his request to admit irrelevant witness testimony at sentencing. We need not reach his ineffective-assistance-of-counsel claim on direct appeal. Accordingly, we decline to address the merits of

the defendant's ineffective-assistance-of-counsel claims without prejudice and otherwise AFFIRM the defendant's conviction and sentence.