RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0214p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

JOHNATHAN HOLT,

        *Defendant-Appellant*.

> No. 23-3106

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:14-cr-00127-19—Algenon L. Marbley, District Judge.

Argued: June 13, 2024

Decided and Filed: September 9, 2024

Before: GIBBONS, WHITE, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Melissa M. Salinas, Ashley N. Munger, UNIVERSITY OF MICHIGAN LAW SCHOOL, Ann Arbor, Michigan, for Appellant. Kimberly L. Robinson, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for Appellee. **ON BRIEF:** Melissa M. Salinas, Ashley N. Munger, My Seppo, UNIVERSITY OF MICHIGAN LAW SCHOOL, Ann Arbor, Michigan, for Appellant. Kimberly L. Robinson, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

MURPHY, Circuit Judge. Just weeks before he turned eighteen, Johnathan Holt shot and killed a drug dealer on behalf of a dangerous gang. Soon after this murder, Holt himself suffered gun violence that left him paralyzed from the chest down. A federal jury later convicted him of

two crimes for the murder.  A district court sentenced him to a mandatory term of life in prison. Yet Holt had committed the murder as a juvenile, so this sentence violated the Eighth Amendment under *Miller v. Alabama*, 567 U.S. 460 (2012).  The district court thus granted Holt's request for relief from his life sentence.  It resentenced him to a total of 900 months' imprisonment.

Holt now raises two general challenges to this new sentence.  *First*, he argues that it still violates the Eighth Amendment both because the district court did not adequately address his youth and because the Bureau of Prisons has not properly treated his paraplegia.  But the Supreme Court's caselaw requires district courts only to *consider* a defendant's youth.  The district court here did so.  Holt also raises his medical-based Eighth Amendment claim in the wrong venue: a criminal appeal challenging his *prison sentence* rather than a civil suit challenging his *medical care*.  *Second*, Holt argues that his sentence is procedurally and substantively unreasonable when measured against the requirements in Federal Rule of Criminal Procedure 32 and the sentencing factors in 18 U.S.C. § 3553(a).  Yet Holt did not adequately preserve most of his procedural claims.  And the court's lengthy sentence reasonably fit Holt's brutal crime.  We thus affirm.

I

For years, members of the "Short North Posse"—a gang named after a neighborhood in Columbus, Ohio—committed many violent crimes and many more drug-trafficking crimes.  *See United States v. Holt*, 751 F. App'x 820, 821, 826–27 (6th Cir. 2018).  The gang routinely robbed rival drug dealers in other neighborhoods.  *See id.* at 821–22.  To assist with these robberies, gang members often sought the aid of "associates" who had not joined the gang.  *Id.* at 821.

Even before Holt turned eighteen, he had become one of these associates.  *See id.* Starting in 2009, he helped members of the Short North Posse commit several robberies.  *See id.* at 821–22.  Holt eventually became the "aggressor" for a specific gang member.  *Id.* at 821.  In this role, he regularly confronted robbery victims by demanding their money on threat of violence.  *Id.*

Quincy Battle was one of Holt's victims. Battle sold marijuana out of his home on the east side of Columbus. *Id.* at 822. On March 24, 2010, Holt traveled with several accomplices to rob Battle of fifteen pounds of marijuana that they suspected he had stashed in his house. *Id.* After one of the accomplices "posed as a customer" seeking to buy marijuana at Battle's home, Holt entered with gun drawn and told everyone to get down. *Id.* Battle instead tried to grab Holt's firearm. *Id.* Holt and an accomplice both shot and killed Battle. *Id.* Holt committed this murder just a few weeks before his eighteenth birthday.

The police failed to solve Battle's murder for years. In the meantime, Holt became a crime victim himself. A few months after the murder, someone shot Holt multiple times in the back. This shooting left him "paralyzed from the chest down[.]" Rep., R.1838, PageID 21033. Holt cannot move his legs or feel anything below his upper chest. He thus needs help to undertake life's most basic activities, such as getting dressed, taking a bath, or moving from his bed to his wheelchair. Holt also must use a catheter and "requires a formal bowel program" to remove bodily waste. *Id.*

In 2014, the government obtained a 38-count superseding indictment against many Short North Posse members and associates, including Holt. The indictment charged Holt with two crimes for Battle's murder: murder in aid of a racketeering enterprise, *see* 18 U.S.C. § 1959(a)(1) ("racketeering murder"), and murder with a firearm during a drug-trafficking crime, *see id.* § 924(j) ("firearm murder"). Holt went to trial. The jury found him guilty of both counts. *See Holt*, 751 F. App'x at 823. The district court sentenced Holt to a mandatory term of life imprisonment on the racketeering-murder count and 25 years' imprisonment on the firearm-murder count. *See id.* We affirmed. *See id.* at 827.

Holt moved to vacate his sentence under 28 U.S.C. § 2255. He asserted that his mandatory life sentence violated the Eighth Amendment because he had murdered Battle when he was seventeen. And since his attorney had not raised this claim at his original sentencing, Holt continued, the attorney had provided ineffective assistance of counsel. In response, the government conceded this constitutional error and asked the district court to vacate Holt's sentences and resentence him on both counts. A magistrate judge recommended this approach, and the district court agreed.

The district court next ordered the probation office to prepare an updated presentence report. According to this revised report, Holt's mother expressed concern that the Bureau of Prisons had not been providing Holt with proper medical care to treat his paraplegia. The report added that the Bureau had sent Holt to a local hospital twelve times in just over two years for several medical ailments. Despite these health conditions, the report still calculated Holt's guidelines sentence as life imprisonment for the racketeering-murder conviction and as any term of years up to life for the firearm-murder conviction.

At the resentencing, the court accepted these calculations. It then gave Holt's counsel a chance to argue for the appropriate sentence. Rather than raise Holt's youth as a mitigating factor, counsel argued that Holt's medical problems showed that *any* prison term would violate the Eighth Amendment. The court rejected this claim, explaining that Holt's "paralysis" did not justify a lenient sentence of home confinement. Tr., R.1896, PageID 21269–70. When turning to the sentencing factors in 18 U.S.C. § 3553(a), the court suggested that it had considered Holt's "youth" at the time of the crime but that this factor could not "legitimate" Battle's murder. *Id.*, PageID 21278. After weighing the other § 3553(a) factors, the court decided to vary downward for the racketeering-murder conviction by imposing a 600-month sentence. It next imposed a 300-month sentence for the firearm-murder conviction to run consecutively to the first sentence. The court thus imposed a total term of 900 months.

II

Holt raises two general claims against his 900-month sentence. He argues that it violates the Eighth Amendment. He adds that it is unreasonable under the governing statutes and rules.

A. Constitutional Challenges

The Eighth Amendment bars the federal government from imposing "cruel and unusual punishments[.]" U.S. Const. amend. VIII. Holt claims that his sentence violates this ban in two ways. He first argues that the district court failed to adequately address his youth. He next argues that his medical needs make even a day in prison cruel and unusual. We generally review these types of challenges de novo. *See United States v. Sherrill*, 972 F.3d 752, 772 (6th Cir. 2020). But the government suggests that Holt forfeited his youth-based claim by relying only on

his medical conditions at the resentencing.  We need not resolve this standard-of-review issue.  Holt's claims lack merit even if we review both de novo.

## 1.  Youth-Based Claim

We start with Holt's youth-based challenge.  The Supreme Court has read the phrase "cruel and unusual" in the Eighth Amendment to incorporate our country's "standards of decency" as they evolve over time.  *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion).  Relying on this test, the Court has gradually limited the punishments that the government may impose on defendants who commit their crimes before they turn eighteen.  The Court first held that the Eighth Amendment bars the government from sentencing juveniles to death.  *Roper v. Simmons*, 543 U.S. 551, 578 (2005).  It then held that the amendment bars the government from sentencing juveniles to life sentences for non-homicide offenses.  *Graham v. Florida*, 560 U.S. 48, 82 (2010).  Most relevantly, it next found that the amendment bars mandatory life-without-parole sentences for juveniles even when they commit murder offenses.  *Miller*, 567 U.S. at 479.

Two elements of the Court's holding from *Miller* matter in Holt's case.  To begin with, *Miller* applies only to a "life-without-parole" term of imprisonment.  *Id.* at 470; *see Atkins v. Crowell*, 945 F.3d 476, 478–79 (6th Cir. 2019).  The district court did not impose such a sentence on Holt.  It imposed a 600-month (50-year) sentence for Holt's first crime and a 300-month (25-year) sentence for his second one.  Some debate exists over when a lengthy term-of-years sentence can amount to an *effective* life-without-parole sentence under *Miller*.  *See Bowling v. Dir., Va. Dep't of Corrs.*, 920 F.3d 192, 197–98 (4th Cir. 2019) (collecting cases).  Consider a few questions: How should we treat "consecutive, fixed-term sentences" (like the two at issue here) when deciding whether the sentences violate the Constitution?  *Cf. Bunch v. Smith*, 685 F.3d 546, 551, 553 (6th Cir. 2012).  Should we treat them like one sentence for a single crime?  Or like distinct sentences for distinct crimes?  And just how long must a sentence last before we may find that it qualifies as an "effective" life sentence when compared to a defendant's life expectancy?  *Cf. Starks v. Easterling*, 659 F. App'x 277, 283–84 (6th Cir. 2016) (White, J., concurring).

Like other courts in similar circumstances, we need not confront these questions. *See United States v. Grant*, 9 F.4th 186, 197–98 (3d Cir. 2021) (en banc); *United States v. Jefferson*, 816 F.3d 1016, 1019 (8th Cir. 2016). Even if the district court imposed a de facto life sentence that would trigger *Miller*'s protections, the sentence would not violate *Miller* because of that decision's second element. *Miller* prohibits only a life sentence that the relevant sentencing laws make "mandatory" on the sentencing court. 567 U.S. at 470. If sentencing courts consider a juvenile defendant's youth as one factor in the sentencing calculus, *Miller* does not prohibit the court from imposing a life sentence as a "discretionary" matter. *Jones v. Mississippi*, 593 U.S. 98, 105–13 (2021); *see United States v. Sparks*, 941 F.3d 748, 753–54 (5th Cir. 2019). *Miller* also does not require the sentencing court to give any "on-the-record sentencing explanation" to justify such a discretionary sentence despite a defendant's youth. *Jones*, 593 U.S. at 118.

The district court followed these rules here. When initially granting Holt relief under § 2255, the court recognized that *Miller* barred its original life sentence because the court had imposed the sentence on the "understanding" that the racketeering-murder statute compelled it. Order, R.1665, PageID 19657. But the court did not make this mistake again. At the resentencing, it recognized that *Miller* required it to "go back and factor in [Holt's] youth" before imposing a sentence. Tr., R.1896, PageID 21268. It later made clear that it had considered Holt's "youth, and what goes on in the mind of a 17-year-old[.]" *Id.*, PageID 21278. The court reasoned that Holt's young age may have rendered him more susceptible to the "influence[]" of the Short North Posse. *Id.* But it concluded that this fact still could "not legitimate killing Quincy Battle." *Id.*

All told, then, the court recognized that *Miller* prohibited a mandatory life-without-parole sentence. It expressly factored Holt's youth into the sentencing calculus. But it nevertheless chose to impose an (admittedly lengthy) 900-month sentence. *Miller* gave it that discretionary choice.

Holt's responses do not convince us otherwise. Relying on *Montgomery v. Louisiana*, 577 U.S. 190 (2016), he suggests that a sentencing court violates the Eighth Amendment if it imposes a life sentence without finding that the crime resulted from a juvenile's incorrigibility (rather than the juvenile's immaturity). *See id.* at 208. Yet Holt does not even cite—let alone

attempt to distinguish—the Supreme Court's recent clarification of *Montgomery* in *Jones*. There, the Court disavowed Holt's view that *Montgomery* requires a sentencing court to make an express incorrigibility finding before imposing a life sentence. *See Jones*, 593 U.S. at 110–13. Rather, a sentencing court need only consider a defendant's youth at sentencing. *See id.* at 109.

Holt counters that the district court also did not "adequately consider" his youth even if it needed to do no more. Appellant's Br. 14. He relies on the "court's own words" to prove this point. Reply Br. 5. According to Holt, the court said that "youth does not change the calculus" about the proper punishment. *Id.* (quoting Tr., R.1896, PageID 21273). The court also allegedly said that "'nothing in anyone's personal history or characteristics' could mitigate this type of offense[.]" *Id.* (quoting Tr., R.1896, PageID 21277). But Holt misreads the resentencing transcript. The prosecutor—not the court—made the first statement. As for the second, the court did not say that nothing in a person's background could "*mitigate*" a murder. *Id.* (emphasis added). It said that nothing in the person's background could "justify" the murder—that is, make it right. Tr., R.1896, PageID 21277. This innocuous statement is, of course, true. And Holt ignores the other portions of the transcript where the court explains why his "youth" does not justify a lower sentence. *Id.*, PageID 21278. *Miller* demands no more.

### 2. Medical-Based Claim

Holt's medical-based claim fares no better. He argues that the Bureau of Prisons has given him grossly inadequate care for his paraplegia. Its failures have allegedly led Holt to develop "severely infected bedsores" that have caused him "immense pain," and the infection has spread to his bones. Appellant's Br. 16; Rep., R.1838, PageID 21034. The sores reached such a serious level that he had to undergo surgery in 2021. Rep., R.1838, PageID 21034. But given the Bureau's allegedly ongoing failure to provide proper care, the sores have returned. *Id.*, PageID 21031–32. Holt asserts that its deficiencies have rendered even a single day in prison so "barbaric" as to be "tantamount to torture" that violates the Eighth Amendment. Appellant's Br. 15; Reply Br. 7. His claim lacks merit primarily because he has raised the claim in the wrong venue.

At one time, the Eighth Amendment's ban on cruel and unusual punishments was thought to reach only the formal *sentence* that a court meted out on a convicted defendant. *See, e.g.*, *City of Grants Pass v. Johnson*, 144 S. Ct. 2202, 2215–16 (2024); *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Ever since *Estelle*, however, the Supreme Court has held that the Eighth Amendment also protects against the *conditions* of prison confinement that a convicted prisoner faces (even if not part of the formal sentence). *See* 429 U.S. at 102–03. Prison employees thus can violate the Eighth Amendment if they gratuitously assault a prisoner, place the prisoner in a dangerous cell, or, most relevant here, fail to provide the prisoner with adequate medical care. *See Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023) (citing *Whitley v. Albers*, 475 U.S. 312, 320 (1986)); *Rhodes v. Chapman*, 452 U.S. 337, 345–47 (1981); *Estelle*, 429 U.S. at 102–05).

This development has led the Supreme Court to recognize two different vehicles in which to raise Eighth Amendment claims, depending on whether prisoners challenge their conditions of confinement or their formal sentences. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). *Vehicle One*: Prisoners typically use civil suits to raise a challenge to their *conditions of confinement* if the challenge would not "imply the invalidity of [their] conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020). If a *state government* has confined the prisoners, they might bring a suit under 42 U.S.C. § 1983 against, say, the providers who gave them inadequate care. *See Phillips v. Tangilag*, 14 F.4th 524, 531–32 (6th Cir. 2021). In these suits, prisoners might seek damages for the past lack of care or an injunction requiring better care in the future. *See Rhinehart v. Scutt*, 894 F.3d 721, 734 (6th Cir. 2018). If, by contrast, the *federal government* has confined the prisoners, they might try to seek damages against prison officials under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Carlson v. Green*, 446 U.S. 14, 17–23 (1980). Or they might try to seek injunctive or mandamus relief in equity or under the Administrative Procedure Act. *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1236, 1239 (10th Cir. 2005).

On the merits of these challenges, the Supreme Court has held that medical care violates the Eighth Amendment if a prison official acted with "deliberate indifference" to a prisoner's

"serious medical needs[.]" *Estelle*, 429 U.S. at 104. This test has both objective and subjective components. *See Phillips*, 14 F.4th at 534. Objectively, prisoners who have received some care must show that their doctors behaved in a "grossly or woefully inadequate" manner, not just that they committed malpractice. *Id.* at 535; *see Rhinehart*, 894 F.3d at 737. Subjectively, prisoners must show that the doctors "consciously disregard[ed]" the "serious medical need" when providing the inadequate care. *Phillips*, 14 F.4th at 535 (citation omitted); *Rhinehart*, 894 F.3d at 738–39.

*Vehicle Two*: Prisoners, by contrast, must pursue challenges to their "*sentence*" through a direct appeal in their criminal case or a later habeas petition. *Heck*, 512 U.S. at 486–87 (emphasis added); *see Kitchen v. Whitmer*, 106 F.4th 525, 537–39 (6th Cir. 2024). Prisoners might take this route if they allege, say, that a death sentence violates the Eighth Amendment because they committed their crimes as juveniles or under a mental disability. *See Nance v. Ward*, 597 U.S. 159, 167 (2022); *see, e.g.*, *Roper*, 543 U.S. at 559–78; *Atkins v. Virginia*, 536 U.S. 304, 309–21 (2002). And they might take this route if they allege that the Eighth Amendment bars their lengthy prison term because they committed a nonviolent crime. *See Ewing v. California*, 538 U.S. 11, 19–20 (2003) (plurality opinion); *United States v. Potter*, 927 F.3d 446, 454–55 (6th Cir. 2019).

On the merits of these challenges, the Supreme Court has recognized two limits that restrict the sentences courts may impose. *See Graham*, 560 U.S. at 59. As an original matter, the Court has held that the Eighth Amendment bars "'torture[s]' and other 'barbar[ous]' methods of punishment" designed to inflict gratuitous pain. *Estelle*, 429 U.S. at 102 (citation omitted); *see Bucklew v. Precythe*, 587 U.S. 119, 130–31 (2019); 3 Joseph Story, *Commentaries on the Constitution of the United States* 750 (1833). As a modern matter, the Court has held that the Eighth Amendment bars sentences that conflict with "the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102 (quoting *Trop*, 356 U.S. at 101 (plurality opinion)). Some lengthy prison sentences might conflict with our evolving standards because they are "grossly disproportionate" to the crime under the totality of a defendant's circumstances. *Graham*, 560 U.S. at 59–60 (citation omitted). Other sentences (notably, those involving the death penalty) might conflict with our evolving standards because

courts categorically may not impose them. *See id.* at 60–61. To identify prohibited punishments under this evolving-standards approach, the Court has looked to "objective" benchmarks like state and federal sentencing laws. *Kennedy v. Louisiana*, 554 U.S. 407, 421 (2008) (quoting *Roper*, 543 U.S. at 563); *see Graham*, 560 U.S. at 62. It has also relied on its "own independent judgment" about the proper proportionality between crimes and punishments and about the legitimate goals that sentences may serve. *Kennedy*, 554 U.S. at 421; *see Graham*, 560 U.S. at 67–68.

Holt's Eighth Amendment claim fails under these standards because he attempts to mix and match aspects of both vehicles. On the one hand, Holt seemingly challenges the *conditions of his confinement*. He alleges that the Bureau of Prisons has provided inadequate medical care to treat his paraplegia. And he relies primarily on *Estelle*, which created the deliberate-indifference test to sue prison officials over inadequate medical care. *See* 429 U.S. at 104–05.

On the other hand, Holt has not filed a *Bivens* suit against prison officials seeking damages for poor care in the past or an equitable suit seeking an injunction requiring better care in the future. He has instead challenged his *sentence* in his criminal case. But the allegedly inadequate "medical care" was not "part of the sentence" that the district court imposed. *Rhinehart*, 894 F.3d at 736; *see also United States v. Goveo-Zaragoza*, 311 F. App'x 235, 239 (11th Cir. 2009) (per curiam). To prove that his *sentence* (rather than his *care*) violates the Eighth Amendment, then, Holt must do more than show that some prison official has acted with "deliberate indifference" to his "serious medical needs" (the test that would have applied under vehicle one if Holt had filed a civil suit, *see Estelle*, 429 U.S. at 104). Rather, Holt must show that his prison sentence violates the Eighth Amendment either as originally understood or under our country's evolving standards (the test that applies under vehicle two since Holt has appealed his sentence). *See Graham*, 560 U.S. at 58–62.

Holt has not tried to meet these standards. Starting with the original meaning, he does suggest that the lack of care has caused him to suffer "barbaric" punishment "tantamount to torture." Appellant's Br. 15; Reply Br. 6–7; *see Bucklew*, 587 U.S. at 130–31. But again, the district court did not impose this lack of care as part of its sentence. To the contrary, it explained that the Bureau of Prisons had a "responsibility to address" Holt's "medical needs" and could

"capabl[y]" do so.  Tr., R.1896, PageID 21279.  Holt has also not tried to show that there are "no set of conditions" under which he could receive constitutionally adequate care.  *Wilson*, 961 F.3d at 838.  For the most part, he challenges such things as the lack of "mobility equipment" in prison.  Appellant's Br. 16.  But he does not explain why he cannot seek this requested care in a civil suit.

Turning to the evolving standards, Holt has not briefed any of the factors on which the Supreme Court has relied when attempting to deduce a "national consensus" against a sentence. *Graham*, 560 U.S. at 62.  Holt, for example, does not identify any sentencing laws against prison terms for those with paraplegia.  *See id.*; *Kennedy*, 554 U.S. at 421.  And his argument fares no better if we rely on our own "independent judgment" about "legitimate penological goals." *Graham*, 560 U.S. at 67.  Like the district court, we fail to see why Holt "should be effectively absolved from any punishment" for a brutal murder "because he suffered paralysis" during a "gunfight" after that murder.  Tr., R.1896, PageID 21269.

At day's end, we do not doubt that Holt has suffered while in custody (just as he likely would suffer outside custody given his serious health needs).  And if Holt believes he has received unconstitutional medical treatment in prison, he can try to pursue civil remedies.  But his medical needs do not render his prison sentence unconstitutional under the Eighth Amendment.

\* \* \*

Holt lastly argues that the *combination* of his youth at the time of the murder and his medical needs at the present time render his sentence cruel and unusual.  But each theory alone lacks merit.  They fare no better even if we consider them collectively.

### B.  Reasonableness Challenges

This conclusion leaves Holt's "reasonableness" challenges to his 900-month sentence. He raises a total of five "procedural" and "substantive" arguments.  *See United States v. Rayyan*, 885 F.3d 436, 440, 442 (6th Cir. 2018).  None has merit.

1. Procedural Claims

Holt first argues that the district court took several procedural missteps during the resentencing hearing. He correctly recognizes that statutes and court rules require district courts to jump through various procedural hoops to impose a "legitimate" sentence. *Id.* at 440. These courts, for example, must conduct the sentencing in conformity with the procedures listed in Federal Rule of Criminal Procedure 32. *See* Fed. R. Crim. P. 32(i). They also must accurately calculate a defendant's guidelines range, adequately explain the chosen sentence, and consider the sentencing factors in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 51 (2007). Holt raises four challenges along these procedural lines, which require us to ask four questions.

*Question 1: Did the district court verify that Holt had reviewed his presentence report with his attorney?* Holt first argues the district court failed to adequately confirm that he had reviewed the revised presentence report and talked about it with his lawyer. Under Rule 32, sentencing courts "must verify that the defendant and the defendant's attorney have read and discussed the presentence report[.]" Fed. R. Crim. P. 32(i)(1)(A). Our court requires "literal compliance" with this verification requirement. *United States v. Mitchell*, 243 F.3d 953, 955 (6th Cir. 2001). But we do not compel district courts to verify the information in any specific way. *See United States v. Jeross*, 521 F.3d 562, 586 (6th Cir. 2008); *United States v. Osborne*, 291 F.3d 908, 910 (6th Cir. 2002); *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988). Courts thus need not directly ask defendants if they have reviewed the report with their attorney as long as the record otherwise confirms that they have. *See Jeross*, 521 F.3d at 586. We have held, for example, that an attorney may confirm that this review took place. *See United States v. Green*, 608 F. App'x 383, 384 (6th Cir. 2015). And we have held that the defendant can confirm that he adequately reviewed the presentence report by raising various objections to the report. *See United States v. Stewart*, 391 F. App'x 490, 495–96 (6th Cir. 2010).

Here, the district court directly asked Holt at the outset of the resentencing if he had reviewed the revised presentence report with his attorney. Holt acknowledged that he had read the report but suggested that he had not discussed it "at all" with his lawyer. Tr., R.1896, PageID 21258. His attorney interjected that she had arranged for an in-person meeting with Holt but that jail staff had said that Holt "was refusing to visit" with her when she arrived. *Id.*,

PageID 21258, 21260.  She did note, however, that she later spoke to him over the phone about the report.  Holt did not challenge this statement but claimed he could not "remember" their conversation.  *Id.*, PageID 21261.  He then backtracked from his initial claim that he had reviewed the report, noting that he had read only "[a] little bit of" it and "discussed probably like one or two things briefly" with his counsel.  *Id.*, PageID 21262.  And rather than refuse to meet with his attorney in person, he claimed that jail staff had refused to "let [him] out [of] the cell" at the scheduled time.  *Id.*  At this point, his lawyer again reiterated that she had spoken with Holt by phone "twice after he had the presentence report."  *Id.*, PageID 21263.  Ultimately, the court chose to "continue with this sentencing" because of these phone conversations between counsel and Holt about the report.  *Id.*, PageID 21264.

According to Holt, this record shows that the district court did not adequately "verify" that he discussed the presentence report with his attorney.  Fed. R. Crim. P. 32(i)(1)(A).  Yet he failed to preserve this claim in the district court.  To raise a claim of procedural error on appeal, defendants or their counsel must object with enough specificity to put the district court on notice of their objection's "true basis" so that the court has the chance to fix the error.  *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (citation omitted).  Applying this test, we have held that defendants do not preserve an objection under Rule 32(i)(1)(A) merely by asserting that they have not read their presentence report or discussed it with their attorney.  *See United States v. Tarpley*, 295 F. App'x 11, 16–17 (6th Cir. 2008); *United States v. Tate*, 516 F.3d 459, 465–66 (6th Cir. 2008).  Rather, defendants must object to a court's decision to proceed with the sentencing despite this fact.  *See Tate*, 516 F.3d at 465–66.  Neither Holt nor his counsel did so. When given the "opportunity" to object at the end of the resentencing, Holt and his counsel said nothing about his failure to review the presentence report or Rule 32(i)(1)(A).  Fed. R. Crim. P. 51(b); *see United States v. Burleson*, 419 F. App'x 649, 650–51 (6th Cir. 2011).

We thus must review this claim for plain error.  *See United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc).  This demanding plain-error test requires Holt to show that the district court committed an "obvious" "error[.]"  *Id.* at 386 (citation omitted).  Holt also must show that this error prejudiced him (because it "affected [his] substantial rights").  *Id.* (citation omitted).  And he must show that this court should exercise its discretion to fix the error

(because it "affected the fairness, integrity or public reputation of judicial proceedings"). *Id.* (citation omitted); *see generally United States v. Olano*, 507 U.S. 725, 732–37 (1993).

Holt has not met these standards. The record does not show any "obvious" mistake under Rule 32(i)(1)(A). *Vonner*, 516 F.3d at 386 (citation omitted). At most, it leaves things unclear. Holt equivocated over whether he had read the presentence report and discussed it with his attorney. He initially conceded that he had reviewed the report but later claimed that he had "barely" read it. Tr., R.1896, PageID 21257–58, 21262. By comparison, he initially claimed that he had not talked about the report with his attorney but later did not dispute his lawyer's view that they had talked about it on the phone. *Id.*, PageID 21258, 21261–62. Meanwhile, his attorney repeatedly suggested that they had discussed the report over the phone. *Id.*, PageID 21258, 21263. These conflicting statements perhaps left the district court with a dispute about the historical facts on this question. But the statements do not show that the court was obviously wrong to "continue with th[e] sentencing" or to find as a fact that Holt had adequately reviewed the presentence report and spoken with his attorney about it. *Id.*, PageID 21264.

*Question 2: Did the district court give Holt an adequate opportunity to speak?* Holt next claims that the district court did not give him the required opportunity to speak. Under Rule 32, sentencing courts "must" "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence[.]" Fed. R. Crim. P. 32(i)(4)(A)(ii). So district courts commit error if they do not "unambiguously" instruct defendants "personally" that the defendants have the right to speak about the proper sentence. *United States v. Carter*, 355 F.3d 920, 926 (6th Cir. 2004). At the same time, defendants do not have an unbounded right to speak about *anything* during this allocution. They may offer a "plea in *mitigation*" that shows why the court should issue a lesser punishment. *Id.* But they may not use the allocution to continue denying their guilt and reargue the defense that they lost before the jury. *Id.*; *see United States v. Vujovic*, 635 F. App'x 265, 272–73 (6th Cir. 2015).

Here, after the lawyers had debated the proper sentence, the district court enforced Holt's right to allocute by asking him: "Mr. Holt, do you have additional remarks you wish to make on your own behalf?" Tr., R.1896, PageID 21274. Holt began to proclaim his innocence, asserting that he "was railroaded" at trial and that the government had used "fabricated" evidence against

him.  *Id.*  When Holt finished his statement, the court explained to him that it had accepted the jury verdict and would like to know what (if any) "mitigating factors" it "should take into consideration in sentencing you."  *Id.*, PageID 21275.  Holt responded: "I really don't know what to say."  *Id.*  The court then moved on without explaining things further.  *Id.*

On appeal, Holt argues that the district court's failure to ensure that he had reviewed the presentence report violated his right to allocute under Rule 32(i)(4)(A)(ii) because it left him with nothing to "say."  Yet again, Holt did not adequately preserve this claim.  We have held that a defendant fails to preserve an objection to an "inappropriate limitation" on the right to allocute if the defendant does not object to the limit in the district court.  *Carter*, 355 F.3d at 926 n.3; *see United States v. Richardson*, 948 F.3d 733, 744 (6th Cir. 2020); *cf. United States v. Dowl*, 956 F.3d 904, 906–07 (6th Cir. 2020) (per curiam).  And here, Holt did not raise this objection at the end of the resentencing when the district court asked if he had any more concerns.  *See Vonner*, 516 F.3d at 385–86.  So we must review this claim for plain error.

Holt has not shown any "obvious" mistake under Rule 32(i)(4)(A)(ii).  *Vonner*, 516 F.3d at 386 (citation omitted).  All agree that the district court told Holt "personally and unambiguously" that he could speak on his own behalf.  *Carter*, 355 F.3d at 926.  And the court also reasonably informed Holt that he should focus on matters of mitigation rather than continue to protest his innocence.  *See Vujovic*, 635 F. App'x at 272–73.  Just because Holt did not know what to say at that point does not mean he was denied the right to speak.

Holt responds that the district court denied him the right to speak *effectively* by holding the resentencing hearing without ensuring that he knew of the presentence report's contents.  But nothing in the text of Rule 32(i)(4)(A)(ii) supports his view that a defendant's right to allocute includes the subsidiary right to know all relevant information.  Holt also cites no case that has read the rule in this way.  His novel argument does not show a plain error.

*Question 3: Did the district court adequately resolve Holt's factual challenges?*  Holt also suggests that the court did not resolve his objections to the presentence report's factual claims.  This argument rests on Rule 32(i)(3)(B).  It tells sentencing courts that—"for any disputed portion of the presentence report"—they must "rule on the dispute or determine that a

ruling is unnecessary[.]" Fed. R. Crim. P. 32(i)(3)(B). To trigger the district court's duty to resolve a dispute about some factual claim in the presentence report, defendants must adequately object to the factual claim. *See United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007). Our caselaw requires them to identify the disputed fact with "specificity and clarity." *Quintero v. United States*, 1991 WL 224078, at *3 (6th Cir. Oct. 31, 1991) (per curiam). It also prohibits them from relying on a "bare denial" of the fact. *United States v. Small*, 988 F.3d 241, 257 (6th Cir. 2021) (citation omitted). So, as other circuits have recognized, a defendant's "[v]ague assertions of inaccuracies" do not trigger a district court's duty to make a ruling under Rule 32(i)(3)(B). *United States v. Owen*, 858 F.2d 1514, 1517 (11th Cir. 1988) (per curiam); *see United States v. Rodriguez*, 711 F.3d 928, 939–40 (8th Cir. 2013); *United States v. Chee*, 514 F.3d 1106, 1115 (10th Cir. 2008).

On appeal, Holt contends that the district court violated Rule 32(i)(3)(B) because it never resolved the disputes that he had raised at the resentencing. Yet again, he did not raise this objection even when the court asked him if he had any final concerns at the end of the resentencing. *See Vonner*, 516 F.3d at 385–86. Like Holt's other claims, then, we will review the claim for plain error. *See United States v. Bradley*, 897 F.3d 779, 784–85 (6th Cir. 2018); *United States v. Chanh Chan Lao*, 287 F. App'x 472, 474 (6th Cir. 2008).

The district court did not commit an "obvious" error by failing to rule on Holt's claimed factual disputes. *Vonner*, 516 F.3d at 386 (citation omitted). The court could have reasonably believed that Holt failed to identify the disputed facts "with the required specificity and clarity" to trigger its fact-finding obligation. *Quintero*, 1991 WL 224078, at *3. Soon after the start of the resentencing, the court attempted to meet this obligation by asking Holt what facts he disputed. Holt responded that he challenged "[e]verything in the" report because the probation officer did not allow him to put his version of the facts into it. Tr., R.1896, PageID 21265. The court explained to Holt that the probation office (not the defense) prepares presentence reports and gave him another "opportunity to make [his] record as to what [he] believe[d] was factually inaccurate[.]" *Id.*, PageID 21265–66. Holt remained at a high level of generality, claiming that "a lot of the information [in the report] is inaccurate." *Id.*, PageID 21266. So the district court pressed for specific challenges a final time. Holt responded that he "can't really go through

every single thing" because he had not "had the time" to identify all the alleged errors. *Id.* At this point, the court cut him off by explaining that he had possessed the report for sufficient time. *Id.* It thus accepted the presentence report's "factual statements" "as its findings of fact." *Id.*, PageID 21267. The court reasonably did so because Holt raised only improper "blanket objections" to the presentence report even after the court asked for specifics. *Rodriguez*, 711 F.3d at 940; *see United States v. McKuhn*, 518 F. App'x 375, 379 (6th Cir. 2013).

In response, Holt relies on *United States v. Saikaly*, 207 F.3d 363 (6th Cir. 2000). But this case looks nothing like that one. There, the defendant made a specific, concrete objection to the presentence report's calculation of the drug quantity involved in his offense. *See id.* at 367, 370. Here, Holt has not identified a single fact that he disputed. So *Saikaly* does him no good.

*Question 4: Did the district court recognize its discretion to reduce Holt's sentence based on his medical conditions?* For his last procedural argument, Holt switches from the requirements in Rule 32 to the sentencing factors in 18 U.S.C. § 3553(a). Holt claims that the district court wrongly believed that it could not reduce his sentence due to his medical needs. He correctly notes that sentencing courts should weigh, among other factors, "the need for the sentence" "to provide the defendant with needed . . . medical care . . . in the most effective manner[.]" 18 U.S.C. § 3553(a)(2)(D). He correctly notes that these courts have discretion to vary below a defendant's guidelines range based on the defendant's poor health. *See United States v. Carthen*, 458 F. App'x 428, 434 (6th Cir. 2012); *United States v. Carpenter*, 359 F. App'x 553, 558 (6th Cir. 2009); *see also United States v. Musgrave*, 647 F. App'x 529, 537 (6th Cir. 2016). And he correctly notes that the courts commit process errors if they issue a sentence based on the mistaken belief that they lack this discretion. *See United States v. Thomas-Mathews*, 81 F.4th 530, 543 (6th Cir. 2023); *United States v. Ruiz*, 777 F.3d 315, 321–22 (6th Cir. 2015). That said, we start with a default presumption that district courts recognize that they have this well-known discretion, so a defendant must point to "clear evidence" in the sentencing record that shows a court's misunderstanding. *Ruiz*, 777 F.3d at 321–22 (quoting *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008)); *see also United States v. Van*, 427 F. App'x 423, 430 (6th Cir. 2011).

The parties debate whether Holt preserved this claim.  *Compare Thomas-Mathews*, 81 F.4th at 538–39, *with United States v. Ford*, 761 F.3d 641, 657 (6th Cir. 2014).  But we need not resolve their debate.  Even under de novo review, Holt has not identified "clear evidence" that the district court misunderstood its discretion.  *Ruiz*, 777 F.3d at 321–22 (citation omitted).  As a general matter, the district court *did* vary below Holt's guidelines sentence of life imprisonment.  So the court knew that it had discretion to do so.  As a specific matter, the court knew that it must consider Holt's medical care as part of the inquiry into the proper sentence.  When balancing the § 3553(a) factors, the court noted that the Bureau of Prisons had already coordinated significant "medical treatment" and "surgeries" for him.  Tr., R.1896, PageID 21279.  The court recognized Holt's concerns that the Bureau had not "addressed" all his "medical needs" in prison.  *Id.*  But it responded that the agency had a "responsibility" to provide care and expressed confidence that it was "capable" of doing so.  *Id.*  We see no evidence in the district court's discussion of the § 3553(a) factors that it believed it could not vary downward based on Holt's medical needs.

Holt's contrary view mistakes the district court's discussion of his *Eighth Amendment* claim for its balancing of the *§ 3553(a) factors*.  Earlier in the resentencing, the court suggested to Holt's counsel that, "unless there is some more recent jurisprudence that has come out, what [Holt's] stay has been like at the [Bureau of Prisons] is not significant for [it] to consider in the sentencing paradigm."  Tr., R.1896, PageID 21269.  Holt identifies this statement as his smoking-gun evidence that the court did not believe it could vary downward.  But the court made this comment in response to Holt's argument that the Eighth Amendment did not permit the court "to send Mr. Holt to prison" given his medical conditions.  *Id.*, PageID 21268.  The court was not discussing its discretionary balancing of the § 3553(a) factors.  Because the court did take Holt's medical needs into account when it later engaged in that balancing, this statement does not provide the "clear evidence" that Holt needs.  *Ruiz*, 777 F.3d at 321–22 (citation omitted).

## 2. Substantive Claim

Holt lastly raises a substantive-reasonableness challenge to his sentence.  Rather than identify any process problems, this type of challenge attacks the final sentence when measured

against all the § 3553(a) factors. *See United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). Yet defendants who claim that their sentences are excessive face a difficult task because we review the sentences under a deferential standard of review, asking only whether a district court abused its discretion. *See Gall*, 552 U.S. at 49, 51. And since Holt's 900-month sentence falls below his guidelines range of life imprisonment, he must rebut the appellate presumption of reasonableness that it triggers. *See United States v. Wells*, 55 F.4th 1086, 1093–94 (6th Cir. 2022).

Holt has failed to do so. The district court reasonably chose its below-guidelines sentence under the § 3553(a) factors. The court started by noting that the presentence report had "properly calculated" Holt's offense level and criminal history—the combination of which called for a life sentence. Tr., R.1896, PageID 21267–68; *see* 18 U.S.C. § 3553(a)(4). It then discussed the nature of Holt's offense, recognizing that "[m]urder, throughout the history of jurisprudence, is the most severe of all crimes." Tr., R.1896, PageID 21276; *see* 18 U.S.C. § 3553(a)(1). At this point, the court asked whether anything in Holt's background could mitigate the need for serious punishment. It recognized his troubled upbringing and youth at the time of the crime but found that these factors did not offset the "heinous" murder. Tr., R.1896, PageID 21277–78; *see* 18 U.S.C. § 3553(a)(1). All told, the lengthy sentence reasonably fit the crime and the defendant.

In response, Holt says that the district court focused too much on the serious nature of his murder and not enough on the mitigating factors, including his youth, mental impairments, and current medical condition. In essence, then, Holt asks us to "rebalance the § 3553(a) factors" and identify the sentence that we would have picked if we had sentenced him. *United States v. Bawkey*, 2022 WL 1261829, at *6 (6th Cir. Apr. 28, 2022). As we have repeatedly explained, that is not our job under the deferential substantive-reasonableness test. *See id.*; *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006).

We affirm.