NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0246n.06

No. 25-3926

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 29, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| JUAN A. CABRERA-CLAROS, | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: GIBBONS, MURPHY, and HERMANDORFER, Circuit Judges.

MURPHY, Circuit Judge. Juan Cabrera-Claros pleaded guilty to illegally reentering the United States after he had been removed. The district court imposed an above-guidelines sentence of 24 months' imprisonment. Cabrera-Claros now challenges this sentence. He argues that the district court varied above his guidelines range based on an unreliable police report about his prior sex crimes. And he argues that the court did not adequately explain the variance. But the district court used the police report only for two largely undisputed facts about his prior crimes: that he was convicted of gross sexual imposition and that he committed the offenses against a relative. And the court left no doubt about why it varied upward: Cabrera-Claros repeatedly entered this country unlawfully and committed serious crimes while here. We affirm.

I

Cabrera-Claros is a citizen of El Salvador. He entered the United States illegally three times between 2011 and 2013. The government removed him each time. Yet he returned to the country again soon after his third removal. He made his way to northeast Ohio.

According to a report issued by the South Euclid Police Department, Cabrera-Claros's 12-year-old daughter accused him of touching her inappropriately in 2024. The victim's mother reported him to the police. The police investigated his daughter's claims and arrested Cabrera-Claros on rape charges. They also alerted immigration authorities. In July 2025, an Ohio court convicted Cabrera-Claros of two counts of gross sexual imposition. The court sentenced him to six months' imprisonment and classified him as a tier-one sex offender.

While Cabrera-Claros's state criminal case remained pending, the United States charged him with illegally reentering the country after a prior removal. *See* 8 U.S.C. § 1326(a). Cabrera-Claros pleaded guilty to this crime.

Before sentencing, a probation officer prepared Cabrera-Claros's presentence report. The probation officer relied on the South Euclid Police Department's report to summarize the facts underlying Cabrera-Claros's sex offenses. Among other things, the presentence report noted that the victim had told hospital staff that Cabrera-Claros had "touched her inappropriately in June 2024[.]" Rep., R.14, PageID 54. The report suggested that she had confirmed these allegations during an interview when she explained that Cabrera-Claros "touched her" and that she "tried to leave and push [him] off her" but could not. *Id.*, PageID 55. She added that Cabrera-Claros threatened to "hurt her family" if she told anyone. *Id.* The report lastly suggested that officers had arrested Cabrera-Claros "for Rape" and that prosecutors had originally charged him with that offense. *Id.*, PageID 54–55.

Cabrera-Claros objected to the inclusion of this information in the presentence report. He reasoned that he had "pled guilty to the elements of the crime" of gross sexual imposition "and no more." Obj., R.14, PageID 66. So he suggested that the court could not consider any "facts" about his crimes "*beyond* the bare elements of" that offense. *Id.* And he thought that the report should contain a disclaimer that "police reports are not presumptively accurate[.]" *Id.*

At sentencing, the district court overruled this objection. Sent. Tr., R.24, PageID 117. The court concluded that Cabrera-Claros's sex crimes were "relevant" to the sentence for his illegal-reentry offense. *Id.* And although it found "the convictions themselves" the most important factor for choosing an appropriate sentence, it suggested that it could consider the information from the police report too. *Id.*, PageID 118. The court next identified Cabrera-Claros's guidelines range as 8 to 14 months' imprisonment. But it announced that it was "considering an upward variance" both because of Cabrera-Claros's repeated illegal entries and because of his sex offenses. *Id.* After the parties debated the proper sentence, the court imposed this variance. It sentenced Cabrera-Claros to 24 months' imprisonment.

The court then gave Cabrera-Claros the chance to raise any additional "objections" to its above-guidelines sentence. *Id.*, PageID 139; *see United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). Cabrera-Claros reiterated his "standing objection" to the court's "reliance on the police report" about his sex offenses. Sent. Tr., R.24, PageID 139. The court responded that it "relied upon" only narrow facts about these offenses: that Cabrera-Claros had been convicted of gross sexual imposition and that his daughter had been the victim. *Id.* The court found the report "reliable" for these facts. *Id.* It added that Cabrera-Claros's conclusory denial to the allegations in the police report was not "sufficient" to adequately object to the allegations. *Id.*

II

Cabrera-Claros has appealed his 24-month sentence. He argues that the district court erred in two ways: by basing this sentence on an unreliable police report and by failing to explain its reasons for the variance. These errors, Cabrera-Claros says, rendered his above-guidelines sentence procedurally unreasonable. *See United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). But neither argument has merit.

A. Reliance on Police Report

Cabrera-Claros first argues that the district court should not have relied on the South Euclid Police Department's report summarizing the factual allegations underlying his sex offenses. He claims that the court's use of this police report violated the Federal Rules of Criminal Procedure and the Due Process Clause. He is wrong on both counts.

We start with the ground rules. A district court may "accept any undisputed portion of the presentence report as a finding of fact[.]" Fed. R. Crim. P. 32(i)(3)(A). When, by contrast, the parties disagree over a "portion of the presentence report," the court must either "rule on the dispute or determine that a ruling is unnecessary" because the issue will not matter to the sentence. Fed. R. Crim. P. 32(i)(3)(B). If a defendant adequately puts a factual allegation in the presentence report at issue, the prosecution bears the burden of proving the fact by a preponderance of the evidence. *See United States v. Silverman*, 976 F.2d 1502, 1513 (6th Cir. 1992) (en banc). But a defendant's "'bare denial' of" a factual allegation will not suffice to trigger the district court's fact-finding obligations. *United States v. Holt*, 116 F.4th 599, 614 (6th Cir. 2024) (quoting *United States v. Small*, 988 F.3d 241, 257 (6th Cir. 2021)). Rather, the defendant must object with enough "specificity" that the district court knows the precise allegation put at issue. *Id.* (citation omitted).

And the defendant must identify "some evidence" that would call this allegation "into question." *United States v. Wala*, 166 F.4th 583, 601 (6th Cir. 2026) (citation omitted).

The Due Process Clause provides a general backstop on top of this procedural framework. *See United States v. Santana*, 723 F. App'x 331, 337 & n.5 (6th Cir. 2018). It gives district courts "wide discretion" to consider all relevant "evidence submitted at sentencing." *Id.* at 336 (quoting *Silverman*, 976 F.2d at 1508); *see* 18 U.S.C. § 3661. District courts thus may rely on police reports if they have "*some* evidentiary basis" sufficient to meet a "minimal indicium of reliability" (whether or not their use would satisfy the rules of evidence). *United States v. Armstrong*, 920 F.3d 395, 398 (6th Cir. 2019) (quoting *Silverman*, 976 F.2d at 1504); *see* U.S.S.G. § 6A1.3(a). But we have also cautioned that the hearsay in these reports sometimes has reliability concerns. *See United States v. Black*, 2025 WL 1356614, at *3 (6th Cir. May 9, 2025) (per curiam).

According to Cabrera-Claros, the district court violated Rule 32 and due process because it relied on "inflammatory" allegations in the South Euclid Police Department's report without finding them reliable or requiring the government to introduce evidence to prove them. Appellant's Br. 15, 21. Cabrera-Claros is wrong for several reasons. To start, he did not object with the "specificity" that Rule 32 requires to alert the district court of the facts that he disputed. *Holt*, 116 F.4th at 614 (citation omitted). His written objection claimed to dispute "all facts" in the presentence report's main paragraph about his sex offenses "*beyond* the bare elements of" gross sexual imposition. Obj., R.14, PageID 66. At sentencing, the district court asked if Cabrera-Claros wanted "to be heard further" on this objection. Sent. Tr., R.24, PageID 117. His counsel responded: "No, Your Honor. That's the entirety of it." *Id.* Yet the relevant paragraph in the presentence report contained a page's worth of alleged facts, many of which are undisputed. It, for example, noted that he had been "represented by counsel" during his state case and that he was

5

sentenced to six months' imprisonment. Rep., R.14, PageID 54. Even now, we are not sure of the specific facts that Cabrera-Claros challenges. In short, by articulating his objection "at a high level of generality," he failed to trigger the court's fact-finding duty. *Holt*, 116 F.4th at 615.

Next, Cabrera-Claros misconstrues how the district court used his sex offenses at sentencing. In his opening brief, Cabrera-Claros claims that the district court relied on the "dismissed rape charges," arguing that the court found as a fact that he committed rape rather than gross sexual imposition. Appellant's Br. 6, 18, 20, 23. In his reply brief, he claims that the court relied on "the statements" about the crimes from the victim and her mother. Reply Br. 3. But the court did no such things. Rather, it varied upward based only on the fact that he committed gross-sexual-imposition offenses against his daughter. At the outset, the court said it was considering a variance, in part, because of the "serious" "*gross sexual imposition*" "offenses," which the court noted were "felonies of the fourth degree[.]" Sent. Tr., R.24, PageID 121 (emphasis added). It later suggested that these "gross sexual imposition" offenses were on the "more serious end of the scale" of possible crimes. *Id.*, PageID 127. And it recognized that Cabrera-Claros had been "convicted of" these crimes—not of rape. *Id.*, PageID 136. Lastly, when counsel reiterated the objection to the police report at the end of the sentencing, the court clarified how it had used that report: "I've relied upon it only to the extent that the defendant entered pleas of guilty to gross sexual imposition . . . , and the police report indicates the defendant's daughter is the victim." *Id.*, PageID 139. The court did not find that Cabrera-Claros raped the victim or rely on her statements from the police report.

Cabrera-Claros responds by pointing to a few places where the court used the word "rape." The court, for example, suggested that Cabrera-Claros had been "charged" and "arrested for" rape. *Id.*, PageID 117, 135. It later added that he had committed "heinous crimes" that were "actually

rape cases that were broken down by way of a plea agreement to gross sexual imposition." *Id.*, PageID 137. In these parts of the sentencing, however, the court did not find that Cabrera-Claros *committed* rape; it found only that he had been *charged* with that crime. And Cabrera-Claros does not dispute the procedural fact that prosecutors initially charged him with rape.

Lastly, Cabrera-Claros did not do enough in the district court to trigger the court's fact-finding duty about the victim's *identity* (the sole fact on which it relied from the police report). For one thing, Cabrera-Claros did not dispute this fact with the "specificity" required to alert the district court that it needed to make a finding about the victim's identity. *Holt*, 116 F.4th at 615 (citation omitted). Indeed, he did not challenge the victim's identity even once at sentencing. For another, Cabrera-Claros offered no "evidence" that would suggest the police report mistakenly identified the victim. *Wala*, 166 F.4th at 601 (citation omitted). His own appellate claims confirm this point. He argues that he submitted enough evidence to put the police report's reliability at issue because he showed that prosecutors dismissed the rape charges in favor of gross-sexual-imposition charges. Appellant's Br. 16, 21. But that evidence concerns the nature of Cabrera-Claros's conduct; it says nothing about the victim's identity. So it did not call "into question" the report's claim about the person that he abused. *Wala*, 166 F.4th at 601 (citation omitted).

The district court's limited reliance on the police report to identify this single fact also distinguishes this case from the one on which Cabrera-Claros relies. *See Black*, 2025 WL 1356614, at *3–4. There, the district court imposed a stolen-weapon enhancement based on a police report that contained "multiple layers of hearsay" about the critical fact: that the gun had been stolen. *Id.* at *3. Here, the court did not rely on the victim's allegations in the report about what Cabrera-Claros had done to her. We thus need not consider the reliability of those allegations.

7

In sum, the district court properly adopted the "undisputed" facts on which it relied when choosing the sentence under Rule 32, and so its sentencing was "constitutionally sufficient" under the Due Process Clause. Fed. R. Crim. P. 32(i)(3)(A); *Silverman*, 976 F.2d at 1510.

## B. Adequacy of Explanation

Cabrera-Claros alternatively argues that the district court failed to explain its ten-month upward variance. But Cabrera-Claros did not make this argument in the district court. So we must review it for plain error. *See United States v. O'Lear*, 90 F.4th 519, 541 (6th Cir. 2024). Under that standard, Cabrera-Claros must establish (among other things) that the district court committed an "obvious" mistake. *Id.*

The court did not make such a mistake. To the contrary, it explained the reasons for its variance. The court gave a "twofold" rationale. Sent. Tr., R.24, PageID 138. Rationale One: The court first opined that, "[o]n three separate occasions," Cabrera-Claros had "returned" to the United States "in short order" after the government had "previously removed" him. *Id.* So it imposed a variance to deter future illegal entries. Rationale Two: The court next explained that Cabrera-Claros had committed "the most serious" of crimes (sex offenses) while here. *Id.* He had harmed a young victim "whose life, more likely than not, will never be the same." *Id.* These rationales sufficed to explain why the district court found that Cabrera-Claros's case differed from the "mine-run" illegal-reentry case and warranted a variance above the guidelines range suited for that typical case. *United States v. Stovall*, 817 F. App'x 205, 207 (6th Cir. 2020) (quoting *United States v. Perez-Rodriguez*, 960 F.3d 748, 753–54 (6th Cir. 2020)).

We affirm.